UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> PERSONAL GENOME DIAGNOSTICS, INC., et al., <br><br> Defendants. | Case No. 19-mc-80131-SVK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL THIRD-PARTY PRODUCTION PURSUANT TO SUBPEONA** <br><br> Re: Dkt. Nos. 1, 5, 6 |

Before the Court is Personal Genome Diagnostics, Inc.'s ("PGDx") motion to compel third-parties, Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR") and attorney Vern Norviel ("Norviel") (collectively, "Respondents"), to produce responsive documents to PGDx's subpoenas, Requests for Production ("RFPs") Nos. 1–9.[1]  ECF 1.  PGDx served the subpoenas at issue in connection with a patent infringement case pending in the United States District Court for the District of Delaware, *Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*, No. 1:17-cv-01623-LPS-CJB.  In that case, Guardant Health, Inc. ("Guardant") alleges that PGDx's "PlasmaSelect" product infringes several of its patents.  *Id.* at 1.  PGDx asserts, *inter alia*, an "unclean hands" defense based on the conduct of Guardant's patent prosecution counsel, WSGR, including Norviel.  *Id.*  WSGR and Norviel oppose PGDx's motion.  ECF 5.  The Court held oral argument on July 18, 2019.

For the reasons set forth below and stated on the record at the hearing, the Court **GRANTS IN PART** and **DENIES IN PART** PGDx's motion to compel.

---

[1] PGDx served separate subpoenas with identical requests for production on WSGR and Norviel. ECF 2-1, Ex. 1; ECF 2-1, Ex. 3.  Because the disputed requests in each subpoena are identical, the Court addresses them collectively as PGDx's RFPs Nos. 1–9.

**I.     BACKGROUND**

In response to Guardant's patent infringement claims, PGDx asserts an "unclean hands" defense based upon the following facts. In 2015, WSGR conducted a due diligence review of PGDx for WSGR client New Enterprises Associates, LLC ("NEA"). ECF 5 at 1. During the course of that review, WSGR and Norviel received confidential information about PGDx's patents. *Id.*; ECF 1 at 1. At the same time as the due diligence review, WSGR and Norviel served as patent prosecution counsel for Guardant, prosecuting the patents Guardant now asserts against PGDx (the "patents-in-suit"). ECF 1 at 1; ECF 5 at 1. PGDx alleges that WSGR attorneys gained access to PGDx's highly confidential information and then used that information to prosecute the patents-in-suit. ECF 1 at 1; ECF 6 at 1. In particular, PGDx alleges that "in March of 2016, after having had substantial access to PGDx's confidential information and business plans, the attorneys made substantial amendments to claim 1 of one of the Patents-in-Suit." ECF 6 at 2. PGDx now seeks to develop this defense through discovery regarding WSGR's due diligence review of PGDx and its patent prosecution for Guardant.

**II.    DISCUSSION**

**A. PGDx's Requests for Production Nos. 1–9**

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena commanding a non-party to produce designated documents and/or appear for a deposition. Fed. R. Civ. P. 45(a)(1)(B)(C). The scope of discovery available through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory comm. note to 1970 amendment).

A court must quash or modify a subpoena that (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(3)(A). "On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Fujikura Ltd. v.*

2

*Finisar Corp.*, No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quoting *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).

Respondents argue that under *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), PGDx has the burden of demonstrating that it is entitled to discovery from Respondents, Guardant's patent prosecution counsel. ECF 5 at 10–11. "The *Shelton* test, however, is limited to circumstances in which the proposed deponent is serving as the opposing party's trial or litigation counsel." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 379 (D.D.C. 2011). It does not apply here, where PGDx seeks discovery from Guardant's patent prosecution counsel who do not represent Guardant in the current litigation. *Id.* at 300 (holding that applying the *Shelton* test to patent reexamination counsel "would be a stretch beyond the recognized reach of that test"). Instead, the Court evaluates PGDx's motion to compel based on the factors set forth in Rules 26 and 45.

### 1. The discovery PGDx seeks is relevant to its unclean hands defense

Respondents argue that PGDx offers no evidence to support its unclean hands allegations. ECF 5 at 7–8. They contend that the diligence regarding PGDx that WSGR and Norviel conducted for NEA "was an entirely separate matter from the representation of Guardant" and that no conflict or unethical behavior took place. *Id.* at 1, 7–8. Respondents' statements regarding their work for NEA and Guardant are misplaced. The question for this Court is not one of ethics or professional responsibility but of relevance. PGDx presents a sufficient factual predicate, uncontradicted by Respondents, to support discovery. In 2015, WSGR and Norviel had access to PGDx's confidential information (ECF 5 at 1), including information relating to the accused product, PlasmaSelect. ECF 1 at 4. Also in 2015, WSGR and Norviel represented Guardant in matters of patent prosecution, including the patents-in-suit. *Id.* at 1; ECF 5 at 1. At least one WSGR attorney, Norviel, worked on both matters. ECF 1 at 1; ECF 5 at 1. This active role in both the due diligence as to PGDx and prosecution of the Guardant patents distinguishes WSGR and Norviel from the more typical by-stander third-parties. The discovery requests as narrowed

by the Court below thus seek relevant discovery arising out of PGDx's unclean hands defense.[2]

### 2. Production of documents from Respondents' patent prosecution files

PGDx's RFPs are directed at two general categories of documents: (1) the patent prosecution files of the Guardant patents-in-suit (RFPs Nos. 7–9); and (2) the due diligence files relating to PGDx (RFPs Nos. 1–6). Respondents first argue that RFPs Nos. 7–9 seek privileged documents. ECF 5 at 9. Given the lack of evidence before the Court, this argument is premature. Respondents have not yet determined whether documents responsive to RFP's 7–9 exist, let alone identified any specific privileged documents. Courts routinely express skepticism of blanket privilege arguments in similar situations. *See Amicus Commc'ns, L.P. v. Hewlett-Packard Co.*, No. 99-0284 HHK/DAR, 1999 WL 33117227, at *2 (D.D.C. Dec. 3, 1999) ("observ[ing] that several courts have allowed the depositions of patent prosecution counsel, and have refused to uphold such counsel's blanket invocation of attorney-client privilege"); *see also Genal Strap*, 2006 WL 525794, at *3 (noting that "'work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection' because it is not created 'in anticipation of litigation'") (citations omitted). Until Respondents confirm the existence of responsive documents, as narrowed by the Court below, and identify the specific documents that they contend are privileged, the issue of privilege is not ripe.[3] *See* Fed. R. Civ. P. 45(e)(2)(A)(ii) (requiring a person withholding subpoenaed information based on privilege to

---

[2] Moreover, discovery from the lawyers who prosecuted the asserted patents is common in patent infringement cases where the defendant raises an inequitable conduct defense. *See, e.g.*, *Genal Strap, Inc. v. Dar*, No. CV2004-1691(SJ)(MDG), 2006 WL 525794, at *2 (E.D.N.Y. Mar. 3, 2006) ("[C]ourts have permitted the deposition of patent prosecution counsel who is also serving as trial counsel where the knowledge of counsel was pertinent to a defense raised of inequitable conduct."). The same reasoning applies here where a defendant has plead a defense of unclean hands specifically implicating the knowledge of patent prosecution counsel. *See Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1243 (Fed. Cir. 2018) (considering deposition testimony from the prosecuting in-house counsel as evidence supporting a finding of unclean hands), *cert. denied*, 139 S. Ct. 797, 202 L. Ed. 2d 572 (2019).

[3] Respondents attempt to further bolster their privilege argument with a passing reference to "privilege disputes in the District of Delaware" and the vague suggestion that those disputes "likely involve at least a portion" of the as yet unidentified documents here. ECF 5 at 10. For the reasons cited above, this blanket assertion is premature and, in its current form, too vague to support Respondent's position.

4

"describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim").

Respondents also assert that discovery regarding Guardant's prosecution of the patents-in-suit is more easily obtained from Guardant. *Id.* at 10–11. Rule 26(b)(2)(C)(i) directs a court to limit discovery "if it determines that" the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Courts frequently limit discovery sought from non-parties when the requesting party could seek the same information from another party in the litigation. *See, e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *3 (N.D. Cal. Mar. 31, 2014) (denying non-party discovery "when the information sought should be in the possession of the party defendants").

Under the facts of the present dispute, the Court finds that Rule 26 does not bar discovery from Respondents regarding Guardant's prosecution of the patents-in-suit. First, the Court notes that the directive from Rule 26(b)(2)(C)(i) is to limit, not exclude, discovery. This Court limits the discovery sought by PGDx by substantially narrowing the requests as set forth below. Second, Respondents cite no authority, and the Court is aware of none, in support of their suggestion that Rule 26(b)(2)(C)(i) bars discovery directly from patent prosecution counsel in favor of a more circuitous (and thus more expensive and time consuming) route through the party/patent holder. Third, deposition testimony or evidence from the counsel who prosecuted the patents at issue is relevant to PGDx's unclean hands defense. Discovery of inequitable conduct, here unclean hands,[4] is not necessarily obtainable from other sources because "the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action." *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002). Thus, while Rule 26(b)(2)(C)(i) narrows the scope of discovery properly sought from non-parties

---

[4] "Inequitable conduct is an equitable 'unclean hands' defense to patent infringement that, once proven, can render the patent at issue totally unenforceable." *Eastman Kodak Co. v. Apple Inc.*, No. 10-CV-6022, 2012 WL 13042663, at *2 (W.D.N.Y. Mar. 27, 2012).

1  generally, the Court must balance these concerns with PGDx's right to seek relevant discovery
2  directly from the actors in its alleged unclean hands defense. The most efficient way to address
3  these competing concerns is to narrow the discovery requests as the Court has done below.

### 3. Production of documents from Respondents' PGDx's due diligence files

Respondents also challenge RFPs Nos. 1–6, which seek discovery related to Respondents' due diligence of PGDx. ECF 5 at 11–12. Respondents argue that because of the likely privileged nature of many responsive documents, reviewing them places a "significant burden" on Respondents. *Id.* at 12. Yet Respondents fail to present any evidence, again in either the papers or at the hearing, in support of either privilege or burden. The Court has no facts before it as to the potential volume of documents at issue or the time and resources necessary to identify and produce responsive documents. Indeed, as noted above, Respondents have not yet determined whether documents responsive to the requests exist, let alone identified any specific privileged documents. Mere speculation regarding blanket privilege assertions and the scope of document review do not support a finding of undue burden. *See Amicus Commc'ns*, 1999 WL 33117227, at *2; *see also Genal Strap*, 2006 WL 525794, at *3. Accordingly, Respondents fail to meet their burden to oppose PGDx's RFPs regarding Respondents' due diligence of PGDx.

Lastly, Respondents argued at the hearing that their May 15, 2019 production satisfies RFPs Nos. 1–5 as narrowed by the Court. To the extent that Respondents maintain this argument having evaluated the content of their May 15, 2019 production in light of the Court's narrowing of the RFPs, Respondents are directed to raise it during the Parties' meet and confer efforts as directed below.

### III. NARROWING THE OUTSTANDING RFPs

The Court has reviewed PGDx's RFPs Nos. 1–9 in light of the principles outlined above and **ORDERS** the following responsive production:

**RFP No. 1:** As written, PGDx's request is overbroad. However, as explained above, certain documents or communications arising out of WSGR's due diligence review of PGDx in 2015 may be relevant to PGDx's unclean hands defense. Thus, further narrowing of the request

6

through the use of targeted search terms, such as "Guardant," is necessary. Accordingly, by C.O.B. on July 24, 2019, PGDx may propose search terms to Respondents,[5] and the Parties are then to meet and confer either by phone or in person. If the Parties cannot agree to search terms, the Court will hold a hearing on **July 31, 2019 at 10:00 a.m.** to address search terms. The Parties are to inform the Court by a joint submission no later than 3:00 p.m. on July 30, 2019, as to the disputed terms. At the hearing, the Parties must be represented by counsel with authority to negotiate and agree to a resolution.

**RFP No. 2:** PGDx is entitled to production of the documents WSGR received from PGDx in 2015. Respondents shall produce responsive documents in accordance with Section V, *infra*.

**RFP No. 3:** At the hearing, the Parties informed the Court that Respondents' May 15, 2019 production satisfied this request, and it is withdrawn from this dispute.

**RFP No. 4:** The focus of this RFP is a specific request made by Respondents about the PlasmaSelect product in July 2015. However, the phrase "relating to" is overbroad. Accordingly, Respondents shall produce documents that reflect or refer to the July 2015 request that PGDx's counsel "send over a detailed workflow for the PlasmaSelect product" in accordance with Section V, *infra*.

**RFP No. 5:** The focus of this RFP is Respondents' communications with PGDx's counsel during August 2015 regarding Guardant's W0201439556 Claim 1. However, the phrase "relating to" is overbroad. Accordingly, Respondents shall produce documents that reflect or refer to Respondents' "discussion of Guardant's W0201439556 Claim 1 with PGDx's counsel in August 2015" in accordance with Section V, *infra*.

**RFP No. 6:** PGDx's request for "[a]ll other non-privileged notes, memoranda, writings, and/or entries" is vague and overbroad. Accordingly, the Court denies RFP No. 6.

**RFPs Nos. 7–8:** As written, PGDx's requests are overbroad. However, as explained above, certain documents or communications arising out of WSGR's prosecution of Guardant's

---

[5] As stated at the hearing, the Court declines to set a numerical limit on search terms but expects that the terms will be highly specific and relatively few in number to allow for the narrow, focused search contemplated by this Order.

1  patents may be relevant to PGDx's unclean hands defense.  PGDx has offered to limit the relevant
2  time frame for these requests to June 2015–February 2018, and the Court adopts that limitation.
3  In additional, further narrowing of the request through the use of targeted search terms, such as
4  "PGDx" or "PlasmaSelect," is necessary.  Accordingly, by C.O.B. on July 24, 2019, PGDx may
5  propose search terms to Respondents, and the Parties are then to meet and confer either by phone
6  or in person.  If the Parties cannot agree to search terms, the Court will hold a hearing on **July 31,**
7  **2019 at 10:00 a.m.** to address search terms.  The Parties are to inform the Court by a joint
8  submission no later than 3:00 p.m. on July 30, 2019, as to the disputed terms.  At the hearing, the
9  Parties must be represented by counsel with authority to negotiate and agree to a resolution.

10  **RFP No. 9:**  PGDx's request for "[a]ll non-privileged documents and communications
11  referring or relating to the work you did on Guardant's patents after your due-diligence review of
12  PGDx in 2015" is vague and overbroad.  Further, PGDx may obtain relevant, responsive
13  documents from the patent history file.  Accordingly, the Court denies RFP No. 9 as overbroad.

14  **IV.   RESPONDENTS' REQUEST FOR COST-SHIFTING**

15  "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance
16  with a subpoena, if those costs are significant."  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178,
17  1184 (9th Cir. 2013).  Citing this rule, Respondents request that the Court condition their response
18  to RFPs Nos. 1–9 on PGDx's reimbursement of "WSGR for its attorneys' time spent gathering,
19  reviewing, and producing documents at their current billing rates to account for the burden on
20  WSGR of lost revenues."  ECF 5 at 13.

21  While some level of cost shifting is appropriate under these circumstances, the Court will
22  need additional, specific information before it can evaluate such a request.  *See United States v.*
23  *McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) ("Without knowing what the
24  non-parties intend to claim, it would be premature for the Court to catalogue the types of expenses
25  that fall on either side of the line between expenses and non-expenses.").  Indeed, "Rule 45 does
26  not cut a blank check to non-parties—unnecessary or unduly expensive services do not 'result
27  from compliance' and, therefore, do not count as 'expenses.'"  *Id.* at 536.  Accordingly, the Court
28  **DEFERS** Respondents' request for cost shifting until the Parties have completed the procedures

8

set forth in Section V, *infra*.

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** PGDx's motion to compel as outlined in Section III, *supra*.  The Court also **DEFERS** Respondents' request for cost shifting.  To efficiently implement the Court's order, the Court sets forth the following schedule and procedure:

- By C.O.B. on July 24, 2019, PGDx will identify additional proposed search terms for RFPs Nos. 1, 7 and 8.  The Parties are then to meet and confer in person or by telephone.  If the Parties cannot agree to search terms, the Court will hold a hearing on **July 31, 2019 at 10:00 a.m.** to address search terms.  The Parties are to inform the Court by a joint submission no later than **3:00 p.m. on July 30, 2019,** as to the disputed terms.  At the hearing, the Parties must be represented by counsel with authority to negotiate and agree to a resolution.
- Respondents shall conduct an initial search to determine the universe of documents to be reviewed for responsiveness and privilege.  By **August 5, 2019**, Respondents shall notify PGDx of the results of this search and provide a proposal addressing (1) the time needed to review the documents; (2) the estimated cost of Respondents' review; (3) a proposed deadline for production; and (4) a proposal regarding a privilege log.
- If the Court holds a hearing on search terms on July 31, 2019, the Court may extend the August 5, 2019 deadline.
- Respondents may also move to extend the August 5, 2019 deadline for good cause.  To support a showing of good cause, Respondents must submit a detailed declaration that identifies the location of Respondents' searches, the searches Respondents are conducting and why Respondents need more time.

////
////
////
////

9

Pursuant to Federal Rule of Civil Procedure 72, a party may serve and file objections to the Court's order within 14 days after being served with a copy.  Fed. R. Civ. P. 72; Civil L-R 72-2.

**SO ORDERED.**

Dated: July 22, 2019

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California